**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).

**June 3, 2020**

# In the Court of Appeals of Georgia

A20A0482. DENHARDT v. SPARKS.

MILLER, Presiding Judge.

This appeal concerns excess funds generated from a tax sale of real property. Eddie Denhardt appeals from the trial court's grant of Carolyn Sparks' motion to dismiss, arguing that the trial court erred in dismissing his claim to the excess funds on the basis that his judgment lien did not entitle him to receive a distribution under OCGA § 48-4-5. We determine that Denhardt was not entitled to a distribution under OCGA § 48-4-5, and we therefore affirm the trial court's grant of the motion to dismiss.

"Whether [Denhardt] has a priority interest in the [f]unds under the relevant statutes is a question of law, which we review de novo." *Bridges v. Collins-Hooten*, 339 Ga. App. 756, 758 (1) (792 SE2d 721) (2016).

In October 2018, the Sheriff of Fulton County held a non-judicial tax sale of real property, for which Carolyn Sparks was the record owner. Sparks became the record owner by virtue of a 2014 quitclaim deed from Vernard Thomas, Jr. Prior to this conveyance, Thomas had executed a 2008 security deed for the same property in favor of American General Financial Services, Inc.[1] In 2010, SLS Recovery, Inc. won a money judgment against American General Finance, Inc., that was unrelated to the property, and SLS recorded its lien in Fulton County in 2011. Then, in January 2017, SLS assigned its judgment and writ of fi. fa. to National Title Clearing, LLC.

The 2018 tax sale of the real property generated $21,986.59 in excess funds, and the sheriff filed a petition for interpleader in the Superior Court of Fulton County under OCGA §§ 48-4-5 and 23-3-90, requesting that the superior court determine which person or entity was entitled to the excess funds. The petition indicated that Sparks may have a claim to the excess funds by virtue of her ownership interest in the property at the time of the tax sale. The petition further noted that National Title Clearing had also asserted a claim to a portion of the excess funds, as the holder of

[1]American General Finance, Inc. was the predecessor to American General Financial Services, Inc. American General Financial Services, Inc. then changed its name in 2011, before becoming known as OneMain Financial Services, Inc. in 2016. OneMain has not asserted any claim to the excess funds, though the record shows that OneMain was named in the sheriff's petition and was served.

an assignment of judgment against "American General Finance," which held a security interest in the property at the time of the tax sale.

National Title Clearing, Sparks, and Fulton County responded to the sheriff's petition. National Title Clearing claimed that, after the payment of any unpaid ad valorem taxes and solid waste fees, it held the highest priority interest in the excess funds. Thereafter, Denhardt filed a motion requesting that he be substituted in the place of National Title Clearing because National Title Clearing had assigned him its judgment and writ of fi. fa. National Title Clearing consented to Denhardt's motion to substitute, and the trial court allowed Denhardt to be substituted in National Title Clearing's place. Eventually, only Sparks' and Denhardt's competing claims to the excess funds remained, and the trial court ordered both parties to appear at a scheduled hearing.

Sparks filed a motion to dismiss Denhardt's claim, raising three arguments: (1) the sheriff's interpleader action was brought under OCGA § 48-4-5 and Denhardt was not entitled to distribution of the excess funds under the statute; (2) Denhardt's judgment lien was invalid; and (3) even if Denhardt's judgment lien had been valid at the time it was entered, it had since lost its lien powers in Fulton County. The trial court then granted Sparks' motion to dismiss Denhardt's claim and awarded the

excess funds to Sparks. The trial court reasoned that Denhardt's judgment was against a corporate entity, and not the property that had been sold, and that Denhardt's judgment lien was merely "against a predecessor in interest to a grantee of a security deed." Therefore, the trial court concluded that Denhardt was not in fact an "interested party" under OCGA § 48-4-5, and could not receive any of the excess funds under the statute. Denhardt then filed a timely appeal.

In his sole enumeration of error, Denhardt argues that the trial court erred by dismissing his claim to the excess funds. We determine that Denhardt was not entitled to a distribution of any portion of the excess funds under OCGA § 48-4-5.

"When a tax sale generates additional funds more than those necessary to satisfy the tax lien, OCGA § 48-4-5 (a) governs the payment of excess tax sale proceeds." *Bridges*, supra, 339 Ga. App. at 759 (1). According to this statute,

> [i]f there are any excess funds after paying taxes, costs, and all expenses of a sale made by the tax commissioner, tax collector, or sheriff, or other officer holding excess funds, the officer selling the property shall give written notice of such excess funds *to the record owner of the property at the time of the tax sale and to the record owner of each security deed affecting the property and to all other parties having any recorded equity interest or claim in such property at the time of the tax sale. . . .* The notice shall state that the excess funds are available for distribution

4

to the *owner or owners* as their interests appear in the order of priority in which their interests exist.

(Emphases supplied.) OCGA § 48-4-5 (a). The subsection following provides that "[s]uch excess funds shall be distributed by the superior court to *the intended parties, including the owner*, as their interests appear and in the order of priority in which their interests exist." (Emphasis supplied.) OCGA § 48-4-5 (b).

Denhardt does not argue that he is an "intended party" under OCGA § 48-4-5 (b). Nowhere in his appellate briefs does he claim to own any interest prescribed in OCGA § 48-4-5 (a) or any interest whatsoever that affects the real property so as to bring him within the ambit of the OCGA § 48-4-5 (b). Rather, his argument is that after the tax sale occurred, the excess funds transmuted into personal property belonging to a priority lienholder, presumably the holder of the 2008 security deed against the real property, and this personal property, in turn, is subject to his lien. The language of OCGA § 48-4-5 (b), however, is unequivocal: the superior court "shall" distribute the excess funds "to the intended parties." And OCGA § 48-4-5 simply does not contemplate the superior court's distribution of the excess funds to persons without an interest in the real property. See, e.g., *Bridges*, supra, 339 Ga. App. at 761 (1) (where lienholder no longer retained a priority lien on the property, lienholder was

5

not entitled to receipt of excess funds under OCGA § 48-4-5 (b)); *Worthwhile Investments, LLC v. Higgins*, 337 Ga. App. 183, 185 (787 SE2d 245) (2016) (appellant's right to the excess funds under OCGA § 48-4-5 was established at the time of the tax sale, at which time it "held an interest in the property"); see also *Performance Food Grp., Inc. v. Davis*, 346 Ga. App. 487, 491 (2) (816 SE2d 468) (2018) (because the Bank did not provide proof of an outstanding balance on the security deed for the property, the Bank failed to show that it had a valid priority interest in the excess funds under OCGA § 48-4-5 (b)).[2] If we were to hold otherwise, we would effectively rewrite the statute, and that we cannot do. *Jackson v. Sluder*, 256 Ga. App. 812, 818 (2) (569 SE2d 893) (2002) ("Under the guise of construing a statute, we are not at liberty to rewrite it.") (citation omitted). Thus, Denhardt's judgment lien, without more, does not entitle him to a distribution of the excess funds under OCGA § 48-4-5.

---

[2] We note that our decision in *Barrett v. Marathon Inv. Corp.*, 268 Ga. App. 196, 197-198 (1) (601 SE2d 516) (2004), on which Denhardt relies, does not dictate our conclusion in this case. In *Barrett*, we analyzed a prior and considerably broader version of OCGA § 48-4-5, under which the excess funds were distributed to "the person authorized to receive the excess." Id. at 197 (1). The legislature had not defined what that phrase meant. Id. The legislature thereafter overhauled OCGA § 48-4-5, the current version of which applies here.

To the extent that Denhardt relies on various more general statutes to buttress his contentions that he has an enforceable judgment lien that has attached to the excess funds and that the superior court is obligated to assist him in collecting on his judgment as a matter of equity, "it is axiomatic that the terms of a specific statute govern over those of a more general statute[.]" (Citation omitted.) *Newton v. Lawson*, 313 Ga. App. 29, 33 (2) (720 SE2d 353) (2011). Therefore, the more specific provisions of OCGA § 48-4-5 — which directly govern the superior court's distribution of excess funds after a tax sale of real property — control in this case. Because Denhardt was not entitled to a distribution of the excess funds under OCGA § 48-4-5, the trial court properly granted Sparks' motion to dismiss.

*Judgment affirmed. Mercier and Coomer, JJ., concur.*